IN RE APPLICATION FOR DISCIPLINE OF GEORGE P. MAVRELIS.

111 N. W. (2d) 341.

October 20, 1961—No. 38,461.

*Glen P. Powrie,* for petitioner.
*Paul A. Skjervold,* for respondent.

PER CURIAM.

Disciplinary proceedings upon the petition of the Practice of Law Committee of the Minnesota State Bar Association for the discipline of George P. Mavrelis, referred to herein as respondent.

The matter came on for hearing on June 12, 1961, before the Honorable Harold N. Rogers pursuant to an order of this court. The referee found that respondent is 57 years of age and practiced law in Minneapolis from

---

[1]Smith v. Bennett, 365 U. S. 708, 81 S. Ct. 895, 6 L. ed. (2d) 39.

1938 until about 1957. He served as a special assistant attorney general for approximately 3 years prior to May 1, 1961.

The referee made further findings on each of the six charges of misconduct contained in the petition and accusation. These findings are substantially as follows:

With reference to the first charge of misconduct, the referee found that prior to April 26, 1955, a friend and client of respondent asked his advice with respect to certain investments. The client now claims that respondent said he had a "nice mortgage" in which the client could invest. The client subsequently gave $3,500 to respondent and respondent gave him a personal note due 2 years from date and bearing interest at 5 percent. The client's uncle was present, and the conversation at the time the transaction was consummated was conducted in Greek, which all the parties understood. The uncle knew that the instrument was a note and so informed the client. After the 2 years had expired the note was not paid and the matter was reported to the Ethics Committee of Hennepin County Bar Association. The client retained private counsel and respondent was sued on the note. Respondent then paid $1,500 on the note and certain additional monthly payments. A balance of $1,120.41 remained due on the note at the time of the referee's hearing but on June 14, 1961, the total amount of the note was paid and a dismissal with prejudice given in the action. The referee found that respondent was in the relationship of attorney to both the client and his uncle in this matter, and that when complaint was made there was an unusual, unexplained, and unnecessary delay in disposing of the matter.

The findings on the second charge were: That respondent had been appointed special administrator of an estate on November 2, 1955; that 2 days thereafter he withdrew $1,582.56 from the account of the deceased, paid the mortician's bill, and claims to have paid other expenses, leaving a balance of $566.56; that no estate account was opened and no inventory or final account was filed; and that eventually efforts were made by the Consulate General of Greece in Chicago to close the administration. Respondent testified that his attorney's fees should be $250 or $300 and produced an envelope containing $260, which constituted the balance of the estate. The referee found that respondent had offered no real justification for the fact that no final account has been filed.

With regard to the third charge, it was found that respondent acted as attorney for a certain special administrator, who was appointed on May 28, 1956. On May 9, 1957, a petition for general administration was filed. However, respondent had not closed the special administration and he was replaced as attorney for the special administrator in 1959. No explanation is made of his failure to make an accounting on behalf of the

special administrator and to close out the special administration after the appointment of the general administrator.

With respect to the fourth charge, while respondent was serving as a special assistant attorney general he represented a client in the municipal court of Minneapolis for a violation of a state tax statute. At the time of his appearance, the impropriety of his representing a defendant in a matter in which the department in which he was employed technically represented the state (although the case was presented for the state by an assistant city attorney of the city of Minneapolis) apparently did not occur to him.

With respect to the fifth charge, respondent had served as attorney for the uncle referred to in the first charge until about 1955 or 1956, at which time he was dismissed as such attorney. The client contends that respondent refused and neglected to return his books and records. The referee found: "It does appear, however, that he has made some search for these books and honestly feels that he has no more of [the client's] books and records, and the main criticism is of his delay in really making a search for the same and in never really doing anything about their return until the date of this hearing."

The final charge was that respondent had failed to respond to a notice of hearing on complaints made against him before the Hennepin County Ethics Committee. It is undisputed that he did not appear at the time and made no effort to contact members of the committee.

Under the order of reference, the referee made the following recommendation as to the disposition of the matter: "It is the Referee's feeling that some form of discipline to Respondent is indicated. In fact, Respondent's counsel conceded the same in final argument. It does not appear, however, that absolute disbarment is indicated."

Although the facts above found do constitute serious and grave misconduct on the part of a practicing attorney, we agree with the referee that absolute disbarment is not necessitated. The primary fault appears to be respondent's lack of responsibility and a distinct tendency to procrastinate and a failure to fully appreciate the responsibility of a lawyer.

The respondent is hereby suspended from the practice of law for a period of one year after the issuance of this opinion and is directed to procure counsel and close the estate referred to in charge two. Respondent is further directed to report to the Practice of Law Committee at the expiration of his suspension to show compliance with this opinion.